## ALPHA WAIT *et al.* *versus* REUBEN BELDING.

A testator, after the introductory words showing an intention to dispose of the whole of his property, devised to his wife the improvement of one third of all his lands in H., where he resided, so long as she should remain his widow, and one half of his personal estate, after the payment of debts and funeral charges, and then proceeded as follows : " I give and bequeath unto my two sons, D. and E., in equal proportion, the whole of my lands and buildings lying and being within the town of H., excepting the improvement of one third of the same as heretofore provided ; also, in equal proportion," certain land in W. ; "also the one half part of all my personal estate, in equal proportion, they paying such legacies as I shall hereby enjoin upon them to pay, also my just debts and funeral charges ; the aforesaid real and personal estate bequeathed to them, to be to them and their heirs forever. I give and bequeath unto my son J. $ 100, to be paid to him within one year after my decease, in equal proportion, by my two sons, D. and E., the aforesaid sum, with what I have heretofore given him, to be his full proportion of my estate ;" and the testator's wife and D. and E. were appointed his executors. Several years afterwards he executed a codicil, which, after bequeathing to a grandson the sum of $ 30, to be paid him by D. and E. in equal proportions, proceeded as follows : " I give to D. and E. all my lands not enumerated in my said will, or which I have purchased since the date of my said will, in H. or elsewhere, in equal proportions, reserving to my beloved wife her right of dower in the same. And lastly, my will and meaning is, that this my present codicil be annexed to and made a part of my last will and testament, to all intents and purposes." It appeared, that the will and codicil were drawn up by different persons, and that a portion of the testator's land in H., at the time of the execution of the codicil, was uncultivated. It was *held*, that the land in H. purchased by the testator after the execution of the will, but before the codicil was executed, passed to D. and E. in fee, by virtue of the devise in the will, the execution of the codicil operating as a republication of the will and giving it effect as of the date of republication, and the description in the will, of the lands devised to them, being broad enough to embrace the whole of the testator's estate there, whether acquired before or subsequently to the date of the will ; and further, that the devise of the after-purchased land in the codicil, was to be construed a devise in fee, because the legacy to the grandson was charged upon D. and E. personally, in respect to the land devised in the codicil.

THIS was a writ of entry, to recover a part of a tract of land in Hatfield. The parties stated a case.

The action was originally brought by Jonathan Wait, but upon his death, two of his sons were admitted to prosecute it.

On April 13th, 1797, Elisha Wait, of Hatfield, the father of Jonathan, executed his will, which contained the following clauses :

" As touching such worldly estate wherewith it hath pleased God to bless me in this life, I give, devise and dispose of the same in the following manner and form."

Wait
*v.*
Belding.

" I give and bequeath unto my well beloved wife, Martha Wait, the improvement of the one third part of all my lands and buildings lying and being within the town of Hatfield, so long as she shall remain my widow ; also the one half of all my personal estate within doors and without, after my just debts and funeral charges are paid, to be to her own use and disposal forever."

" I give and bequeath unto my two sons, Elihu Wait and Consider Wait, my lot of land in the fourth division of commons in Williamsburg, containing about thirty-three acres, to be equally divided between them ; also the sum of fifty dollars in money to each of them, to be paid within one year after my decease by my two sons, Daniel Wait and Elisha Wait, in equal proportion, the aforesaid land and money to be to them and their heirs, and with what I have heretofore given them is the full proportion of my estate."

" I give and bequeath unto my two sons, Daniel Wait and Elisha Wait, in equal proportion, the whole of my lands and buildings lying and being within the town of Hatfield, excepting the improvement of one third of the same, as heretofore provided ; also, in equal proportion, about twenty-one acres of land in Williamsburg, that I purchased of Joshua Warner ; also, in the same proportion, about twenty-one acres of land in Whately, near Zenas Field's land ; also the one half part of all my personal estate within doors and without, in equal proportion, they paying such legacies as I shall hereby enjoin upon them to pay, also my just debts and funeral charges ; the aforesaid real and personal estate bequeathed to them, to be to them and their heirs forever."

" I give and bequeath unto my son, Jonathan Wait, one hundred dollars, to be paid to him within one year after my decease, in equal proportion, by my two sons, Daniel and Elisha, the aforesaid sum, with what I have heretofore given him, to be his full proportion of my estate."

" I give and bequeath unto my four daughters, Lucy Bardwell, Irene Smith, Martha Geary and Electa Wells, the sum of ten pounds to each of them, to be paid in equal proportion by my two sons, Daniel and Elisha, within one year after my decease, that, with what I have heretofore given them, to be their full proportion of my estate."

The testator appointed his wife and his two sons, Daniel and Elisha, executors of his will.

On May 2d, 1812, the testator executed a codicil to his will, containing the following clauses : " I give to my grandson, Josiah Brown junior, son and only child of my daughter, Mary Brown, who was deceased before the making of my said last will and testament, the sum of thirty dollars, to be paid him within one year after my decease, by my two sons, Daniel Wait and Elisha Wait, in equal proportions.  I give to my two sons, Daniel Wait and Elisha Wait, all my lands not enumerated in my said will, or which I have purchased since the date of my said will, in the town of Hatfield, or elsewhere, in equal proportions, reserving to my beloved wife, Martha Wait, her right of dower in the same.  And lastly, my will and meaning is, that this my present codicil be annexed to and made a part of my last will and testament, to all intents and purposes."

The will and codicil were drawn up by different persons.

After the will was executed, but before the execution of the codicil, the testator purchased the demanded premises, and was seised thereof at the time of his death, which happened in 1816.  The testator, at the time of the execution of the codicil, and from that time until his death, was seised in fee of another lot of land in Hatfield, which was wholly wild and uncultivated.  Immediately after the death of the testator, the two sons, Daniel and Elisha, took possession of the demanded premises, claiming an estate in fee therein, and before the death of Daniel, which took place in 1833, conveyed the same in fee, by a deed of bargain and sale, with covenants of warranty, to the tenant.  Elisha, the son, was still living.

Judgment was to be rendered upon these facts, as the Court should direct.

The case was argued in writing.

*L. Strong*, for the demandants, contended that the demanded premises having been purchased subsequently to the execution of the will, must have been devised by the codicil, if devised at all, and that Daniel and Elisha Wait took only life estates therein, upon the determination of which, whether by the death of the devisees, or by forfeiture, the land should be divided among the heirs of the testator as intestate estate.  *Right* v.

Wait
v.
Belding.

*Sidebotham*, 2 Doug. 763 ; *Denn* v. *Mellor*, 5 T. R. 558 ; S
C. 2 Bos. & Pul. 247 ; *Doe* v. *Child*, 4 Bos. & Pul. 335 ;
*Doe* v. *Wright*, 8 T. R. 64. To the point that the legacy of
thirty dollars in the codicil was a charge upon Daniel and Elisha,
in reference to the obligation imposed on them by the original
will, and not in respect to the land devised by the codicil, he
cited *Doe* v. *Holmes*, 8 T. R. 1 ; *Merson* v. *Blackmore*, 2
Atk. 341 ; *Doe* v. *Allen*, 8 T. R. 497 ; *Jackson* v. *Harris*,
8 Johns. R. 146 ; that by the annexation of the codicil to the
will, the devise to Daniel and Elisha and their heirs was not so
connected with the devise in the codicil as to give them a fee
in the newly purchased lands, *Hopewell* v. *Ackland*, 1 Salk.
239 ; *Right* v. *Sidebotham*, 2 Doug. 759 ; *Doe* v. *Child*, 4
Bos. & Pul. 335 ; 8 Vin. Abr. 214, *Devise*, *Q. a.* 1 ; Rol.
Abr. 844, *Estate*, *M* 1 ; *Strathmore* v. *Bowes*, 7 T. R. 478 ;
*Dewitt* v. *Yates*, 10 Johns. R. 158 ; *Willet* v. *Sanford*, 1
Ves. sen. 186, cited in Ambl. 452 ; *Pitcairn* v. *Brace*,
Finch's Ch. R. 403 ; Powell on Dev. 405 ; *Turner* v. *Kett*,
4 T. R. 601 ; *Stead* v. *Berier*, 2 Shower, 63.

*I. C. Bates* and *Dewey*, for the tenant, cited to the point,
that if the devise in the codicil were to be construed as an
independent instrument, it must be held to be a devise of a
fee simple, by reason of the legacy of $ 30 charged upon the
person of the devisees, *Doe* v. *Richards*, 3 T. R. 356 ; *Doe*
v. *Snelling*, 5 East, 97 ; *Reed* v. *Hatton*, 2 Mod. R. 26 ;
*Doe* v. *Holmes*, 8 T. R. 1 ; *Stevens* v. *Winship*, 1 Pick. 326 ;
that the execution of the codicil was a republication of the
will, giving it effect as if it were of the same date as the codi-
cil, 4 Dane's Abr. 550 ; Sugden on Vendors, 138 ; *Barnes*
v. *Crowe*, 1 Ves. jun. 486 ; *Brownell* v. *De Wolf*, 3 Mason,
494 ; *Acherly* v. *Vernon*, Comyns's Rep. 381 ; *Doe* v. *Davis*,
Cowp. 159 ; *Pigott* v. *Walker*, 7 Ves. 98 ; Powell on Dev.
*Republication*, 652 to 675 ; Bac. Abr. *Wills and Testaments*,
*D* 1, *p.* 320 ; *Potter* v. *Potter*, 1 Ves. sen. 437 ; *Wilde* v.
*Holtzmeyer*, 5 Ves. 816 ; that the will and codicil were to be
construed together for the purpose of determining the intent of
the testator in the devise made in the codicil, *Westcott* v. *Cady*,
5 Johns. Ch. R. 343 ; 1 Swinb. on Wills, 30 ; *Willet* v.
*Sandford*, 1 Ves. sen. 387 ; *Fuller* v. *Hooper*, 2 Ves. sen.

242 ; *Masters* v. *Masters*, 1 P. Wms. 421 ; *Pigott* v. *Walker*, 7 Ves. 98 ; that the terms of the legacy to Jonathan Wait might operate as an estoppel against him, *Denn* v. *Cornell*, 3 Johns. Cas. 174 ; that a special intent to exclude another person as heir at law, gives a fee to a devisee, where such a construction will alone operate to produce the exclusion, *Bates* v. *Clayton*, 8 East, 146 ; *Goffe* v. *Haywood*, 1 Rolle's R. 369 ; Cruise's Dig. *Devise, tit.* 38, *c.* 11, § 19 ; *Horton* v. *Horton*, Cro. Jac. 74 ; *Higham* v. *Baker*, Cro. Eliz. 15 ; *Willis* v. *Lucas*, 1 P. Wms. 471 ; *Roe* v. *Somers*, 5 Burr. 2608 ; *Butler* v. *Little*, 3 Greenl. 239 ; and that the construction contended for by the tenant, has been adopted in similar cases by this Court, *Richardson* v. *Noyes*, 2 Mass. R. 56 ; *Sargent* v. *Towne*, 10 Mass. R. 303, cites, *Ridgway* v. *Parker ; Cook* v. *Holmes*, 11 Mass. R. 529 ; *Farrar* v. *Ayres*, 5 Pick. 404 ; *Baker* v. *Bridge*, 12 Pick. 28.

SHAW C. J. delivered the opinion of the Court. The question in the present case is, whether by the will of Elisha Wait senior, taken in connexion with the codicil, his sons, Elisha and Daniel, took an estate in fee, or for life only, in the premises, which are the subject of this action. These cases often present questions of great difficulty. The rule of law seems well enough settled, that in a devise of real estate, without limiting it to the devisee and his heirs, a life estate only is devised, unless from some clause or provision of the will it appears, that notwithstanding the want of words of limitation, it was the intention of the testator to give an estate in fee ; that if such intent can be discovered in any part of the will, the law will give effect to it ; and that every part, provision and clause in the will, is to be resorted to for that purpose. The difficulty consists in applying the rule, and ascertaining from an illiterate will, drawn without skill, or regard to technical rules, what the intent of the testator in this respect really was. In doing this, it no doubt often happens, that the real intent of testators is disappointed. Some rules to aid in such construction have been adopted, ascertaining what particular clauses shall, and what shall not, be regarded as evidence of the intent of a testator, to give a fee, when the devise unaided will give a life

*April term 1837, in Hampshire.*

estate only ; and where such rules have been adopted, it seems highly fit that courts of justice should adhere to them, as constituting rules of property.

In the present case the property in controversy is situated in the town of Hatfield, and is part of a parcel of real estate of which the testator was not seised at the time when he made his will, but of which he was seised when he executed the codicil. One ground taken by the defendant, who claims under the devisees, is this ; that the clause in the original will is large enough, in its terms, to include this parcel of estate, and would pass it, but for the operation of the well known technical rule, that a devise of real estate can only operate upon such estate actually held by the testator, at the time of the execution of the will, and cannot operate to pass after-purchased lands, however manifest it may be, from the terms of the will, that it was the intent of the testator to make it operate upon estate afterwards to be acquired by him. It is then further contended, that as the devise in the original will, shows an intent to give all his lands in Hatfield, and as the execution of the codicil operates as a republication of the will, it gives effect to the will, as of the date of republication, and as this obviates the technical objection, affecting after-purchased lands, the premises in question passed to Daniel and Elisha Wait, by virtue of the original devise, and this gives a fee in technical terms, and they took the premises under that devise. And the Court are of opinion, that this is a correct view of the legal operation and construction of the will and codicil.

The original will was made in 1797. It appears, that the testator then had five sons and four daughters, and one grandson, the only child of a deceased daughter. He gives to his sons, Consider, Elihu, and Jonathan, several bequests in land and money, and to his four daughters £10 each, all declared to be, with what he had given them, their full proportions respectively of his estate. He takes no notice of the deceased daughter, or his grandson, child of that daughter ; this was probably an oversight, as he afterwards, by a codicil, gives this grandson a small pecuniary legacy, about equal to those which he had given to his daughters. He gives to his wife one third

of all his lands and buildings in Hatfield, so long as she shall
remain his widow, with one half of his personal estate, sub-
ject to the payment of debts and funeral charges, to be at
her own disposal forever. The devise upon which this ques-
tion immediately depends, is as follows ; " to my two sons,
Daniel Wait and Elisha Wait, in equal proportion, the whole
of my lands and buildings " in Hatfield, except the third to
the wife, also a tract of land in Williamsburg, described, and
a tract of land in Whately, described, and the remaining half
of the personal property, " they paying such legacies as I shall
hereby enjoin upon them to pay," also debts and funeral
charges, " the said real and personal estate being to them and
their heirs forever." By the same instrument he does enjoin
upon Daniel and Elisha to pay all the pecuniary legacies thereby
given to his other children. This clause, although not in terms
a residuary devise, yet, if he had no other estate except what lay
in Hatfield, operated, in effect, as a residuary devise ; and this
conclusion is strengthened by the consideration, that as his
domicil and homestead were in Hatfield, it may be presumed,
that the bulk of his property was. He gives to the other chil-
dren the legacies and bequests, as a full proportion of his es-
tate ; the will professes to be an entire disposition of his estate ;
and he makes Daniel and Elisha, with his wife, his executors.
These considerations are not important to show, that he in-
tended a fee to Daniel and Elisha; of the land given in the
original will, because it is given to them and their heirs in
terms ; but they may be of some importance to show that, by
the terms, " the whole of my lands and buildings lying and
being within the town of Hatfield," the testator intended not a
specific description of particular parcels, which he then owned,
but a general designation of his real estate, in that, the town of
his domicil. The distinction is this ; had the testator said all
the lands which I may leave at my decease, lying in Hatfield,
it would have indicated an intent to include all after-purchased
lands. But by the rule of law it would be inoperative as to
after-purchased lands. But then a republication of the will
after the purchase, bringing its operation down to the date of
the republication, would remove the legal objection, and give
effect to the intent of the will. But if the words of the original

will were such as to embrace in terms, lands then owned, a mere republication afterwards would not include after-purchased lands. The description would still be, of lands owned by the testator at the date of the original will, and would thereby exclude lands afterwards purchased. To illustrate this by reference to a bequest of personal property, where a will, if so intended, may operate as well upon after-acquired property, as upon that held at the date of the will. Should a man bequeath all his estate, in the public funds, all his bank and insurance stock, or all his farming stock and utensils, it would embrace all held at the time of his decease, whether held at the date of the will or acquired afterwards. But if it were, all shares *which I now own* in such a bank, or all cattle and horses, now on my farm, it would describe specific shares and particular cattle and horses, and could not extend to others. The same thing would be true of real estate, except for the intervention of the rule in regard to after-purchased lands. But when the effect of this rule is obviated by a republication, the analogy becomes more perfect. Then the question turns on the intent of the testator, and this again on the nature and terms of the description. In general, a will looks to the future ; it has no operation, either on real or personal property, till the death of the testator. General words, therefore, may as well include what the testator expects to acquire, as what he then actually holds. The term, " all my property," may as well include all which may be his at his decease, as all which is his at the date of the will, and will be construed to be so intended, unless there are words in the description which limit and restrain it. We are then brought back to the particular description, " the whole of my lands and buildings lying and being in the town of Hatfield." There are certainly no words, and nothing in the will, showing an intent to limit it to the lands and buildings then held by him. No such intent can be presumed. Had it been *all my lands and buildings in Hatfield*, or elsewhere, in the original will, the law would equally have restrained its operation to lands then held, not because it was the intent of the testator that it should so operate, but because, assuming that it was his intent that all should pass, such intent is in contravention of the rule of law, and cannot be carried into effect.

The Court are of opinion, that this general description of the whole of his lands and buildings in Hatfield, is broad enough to embrace his whole estate there, whether acquired before or subsequently to the making of the will, and that there is nothing in the terms or construction of the will, which would warrant us in restraining it to lands then owned.   By the Revised Statutes it is provided, that a will shall embrace after-acquired real estate as well as personal, when such is the intent of the testator.   These statutes do not affect this will, and I only allude to them by way of illustration.   Suppose this will had been made after the Revised Statutes, and the question should be, whether the estate now in controversy passed by this devise. There seems to be no doubt that it would, the description being general, of all lands in Hatfield, without limitation as to the time of acquisition.   Then if this description was sufficient to include all real estate in Hatfield, it would have passed by the original will, but for the rule of law, restraining the operation of all devises, to estate held by the testator at the date of the devise.   But when the date is brought down by the republication of the will, it takes effect upon all estate acquired between the original date and the republication, and held by the testator at the time of republication.   Had there been a general residuary clause, for instance, such would clearly have been the effect of a republication.   But the only difference is, that a residuary clause embraces all estate, whenever acquired ; but if the description actually used is sufficiently large to embrace the estate in controversy, the result must be the same as to such estate.

But then it is said, and this argument is deserving of consideration ; that however this would be, upon a simple republication of the will, the same result does not follow here, because the testator in terms, by the codicil, makes a new devise of all lands " not enumerated in my said will, or which I have purchased since the date of my said will, in the town of Hatfield or elsewhere," and that having made such express devise, there is no room for implication.   This argument is ingenious, but we think not solid.   Had such devise been made to any other person than Daniel and Elisha, or to them upon any other express terms or tenure, as for life or years, such would undoubtedly have been the effect of the express devise.

Wait
v.
Belding.

Let us again test this, by supposing a general residuary devise. Suppose the testator had said, in the original will, *I give all the rest and residue of my property, whatsoever and wheresoever, to Daniel and Elisha, and their heirs.* He acquires other real estate. This would not pass. But he makes a codicil, and republishes his will. Should he by such codicil devise the after-acquired estate to others, or to Daniel and Elisha, for their lives, this would prevent the republication from giving effect to the residuary clause, so as to pass the after-acquired estate ; but this result would arise only because the original will is republished, confirmed, and brought down to the time of the republication, to have effect then so far as it was not altered by the codicil, but no further. But when the after-acquired estate is devised by the codicil to the same Daniel and Elisha, without limitation as to the quantum of estate, in general terms, we think the question is left where it was, uncertain as to the specific intent, and therefore the general rule will govern. I apprehend that the force of this argument depends upon an unwarranted assumption, namely, that because, by the codicil, the testator devised to Daniel and Elisha an estate, without saying to their heirs, therefore it was his *intent* to give them an estate for life only. Whereas I think it is already shown, that such intent of the testator cannot be presumed from such omission of words of limitation.

If then it be asked, why this clause was inserted at all in the codicil, if the after-acquired estate would have passed without it, I think it is a satisfactory answer to say, that the will was drawn without technical skill, and this devise was inserted for greater caution, to carry out and complete the general plan and purposes of the will.

But there is another and a distinct ground, on which the Court are of opinion, that this devise must be taken to pass a fee.

It has already been stated, that whenever it appears from any part of the will, that it was the intent of the testator, that a devisee under a devise in general terms without words of limitation, shall take a fee, the law will give it that effect. And it has also been stated, that where by a series of decisions, particular provisions have been held to manifest such in-

,ent, it is important that such decisions should be followed, for the sake of uniformity in the rules of property. The law presumes, that when one devises an estate to another, he intends that that other shall receive a benefit. Whenever one devises an estate, and in respect thereof directs that the devisee shall pay a sum of money or perform any other onerous duty, if the devise were to be construed a life estate, such estate might terminate within a year or even a day after it vested, and before yielding any profit, but still the debt must be paid, or the duty performed, in which case the bequest would be a burden instead of a benefit. To avoid this possible effect, the law concludes that it must have been the intent of the testator to give something more permanent and lasting than a life estate, and therefore that it must be an estate in fee. To have this effect, it must appear, that the payment or other duty is charged on the person of the devisee, because if it is a charge to pay out of the profits of the estate devised, then if the fund fails, the obligation to pay ceases; the obligation to pay can only be coextensive with the property to pay it with, and then, however precarious the estate, the devise could in no event operate as a burden on the devisee.

By this codicil, the testator gives to his grandson, Brown, "the sum of thirty dollars, to be paid him within one year after my decease, by my two sons Daniel Wait and Elisha Wait, in equal proportions." He then proceeds to give to the same two sons, without the word *heirs*, all lands not enumerated in the will, or purchased after its date. Here the payment of the money and the devise of the real estate, are mentioned in immediate connexion, and if this instrument stood alone, to be construed independently, there is no doubt, that it would come within the principle stated, and the devise would be construed a fee, in respect to the burden imposed for the payment of money. But then it is contended, that taken in connexion with the will, this legacy to the grandson was to be paid out of the personal property and general funds of his estate, and was directed to be paid by Daniel and Elisha, because they were executors, and had the administration of those funds. To this there are several objections. By the original will, one half of the personal estate was given to the widow

absolutely for her own disposal, subject only to the payment of debts and funeral charges, and not subject to legacies. In the next place, Daniel and Elisha were only two out of three of the executors, the wife being one, and if it had been intended that this legacy should have been paid out of the general funds by the executors, he would have directed the payment to be made by all three of the executors, naming or describing them. But what renders it decisive, that this money was to be paid by the devisees personally, and out of their own moneys, is, that it was to be paid by Daniel and Elisha in equal proportions. The general fund of the estate, is one entire fund held by the executors jointly in trust, and whether paid by the hand of one or the other, the payment would be from that joint fund, and charged to the estate. Then a direction that they should pay it in equal proportions, that is, one half each, necessarily leads to the conclusion, that they were to pay it personally and out of their own funds.

Nor can it be legally inferred, that this payment was charged upon Daniel and Elisha, in respect to the estate devised in the will, and not in respect to the estate devised in the codicil. Such an assumption is, at least, gratuitous, and finds no support, either in the will or codicil. The natural conclusion would be, that the charge contained in the codicil, being in immediate connexion with the devise made in the codicil, had respect to that devise, unless the contrary could be shown from other provisions.

But there is one circumstance, leading to a conclusion, that the testator did not intend to require them to pay other legacies, in respect to the property given in the original will. In the original will, after the several bequests to Daniel and Elisha, he adds, " they paying such legacies as I shall *hereby* enjoin upon them to pay." They were to have those lands on condition of paying the legacies *therein given*, that is, by the original will. No intent is shown, to charge them with other legacies, as conditions of having the same lands. Nor does it appear, that he ever intended to require the payment of other legacies, without devising other lands. Accordingly the new charge and the new devise, were all made at one time, and by the same instrument, and thus indissolubly connected together

On this ground, therefore, we are satisfied that the devise in the codicil was a devise in fee, to Daniel and Elisha Wait, and that the tenant holding under them has a good title.

*Demandants nonsuit.*